19 - 0 0 9 8 JMC

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jonathan S. Stewart, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), Baltimore Division, Baltimore, Maryland, being duly sworn, depose and state as follows:

1.      I have been a SA with the FBI since May 2018. Prior to my employment with the FBI, I was a State Trooper with the Maryland State Police beginning in January 2012. The majority of my time with the Maryland State Police was spent assigned to a federal high intensity drug trafficking area (HIDTA) task force, where I was a federally deputized task force officer for both the Drug Enforcement Administration (DEA) and the Department of Homeland Security, Homeland Security Investigations (HSI). During that time, I authored dozens of federal search warrants in furtherance of investigations, as well as authored multiple Title III affidavits and ran multiple wiretap investigations. Since being employed with the FBI, I have primarily investigated federal violations concerning child pornography and the sexual exploitation of children. I have gained experience through daily work related to conducting these types of investigations. I have participated in the execution of numerous search warrants, of which the majority have involved child exploitation and/or child pornography offenses. Many of the child exploitation and/or child pornography search warrants resulted in the seizure of computers, cell phones, other electronic media, and other items evidencing violations of federal laws, including various sections of Title 18, United States Code § 2252A involving child exploitation offenses. I have also participated in the execution of numerous search warrants for online accounts, such as email accounts, online storage accounts and other online communication accounts related to child exploitation and/or child pornography. In the course of my employment with the FBI, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media and within online accounts.

1



2. As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3. This affidavit is made in support of an application for a warrant to search the following items (hereinafter referred to as the "TARGET DEVICES"):

    a. A black/grey LG smartphone in a green/black case, Model: LM-X210ULM, S/N: 803CYJZ0039316; and

    b. A black ZTE cellphone, Model: ZTEN817, S/N #: 320E7600A167;

4. The TARGET DEVICES are to be searched for evidence of violations of Title 18, United States Code, Section 2252A(a)(2) (distribution and receipt of child pornography), Title 18, United States Code, Section 2252A(a)(5)(B) (possession of child pornography) (the TARGET OFFENSES).

5. The statements in this affidavit are based in part on information and reports provided by the Maryland Division of Parole and Probation, the Washington County Sheriff's Office, and on my experience and background as a Special Agent of the FBI. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of the TARGET OFFENSES are located in the TARGET DEVICES.



19 - 0 0 9 8 JMC

## SUMMARY CONCERNING CHILD PORNOGRAPHY, PERSONS WHO POSSESS AND COLLECT CHILD PORNOGRAPHY AND HOW USE OF COMPUTERS AND THE INTERNET RELATES TO THE POSSESSION, RECEIPT AND DISTRIBUTION OF CHILD PORNOGRAPHY

6. Based on my investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who utilize the internet to view and receive images of child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals, including the following:

    a. Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

    b. Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

    c. Individuals who have a sexual interest in children or images of children frequently maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

    d. Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer or cellphone, and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, or in online storage, email accounts or other online communication accounts, to enable the individual to view the collection, which is valued highly.

3



  e. Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/collectors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography. This data is typically in digital format, and often maintained on computers, cell phones and in online storage, email accounts or other online communication accounts.

  f. Individuals who would have knowledge on how to distribute and receive digital images of child pornography through the use of peer to peer networks and other online methods would have gained knowledge of its location through online communication with others of similar interest. Other forums, such as bulletin boards, newsgroups, internet relay chat or other chat rooms have forums dedicated to the trafficking of child pornography images. Individuals who utilize these types of forums are considered more advanced users and therefore more experienced in acquiring a collection of child pornography images.

  g. Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period. This behavior has been consistently documented by law enforcement officers involved in the investigation of child pornography.

7. Based on my investigative experience related to computer and internet related child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned the following:

  a. Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized. It has also revolutionized the way in which child pornography collectors interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies.) The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls. Any reimbursement would follow these same paths.

  b. The development of computers, smartphones and the internet have added to the methods used by child pornography collectors to interact with and sexually exploit children. Computers, smartphones and the internet serve four functions in connection with child pornography. These are production, communication, distribution, and storage.



 c. Mobile devices such as laptop computers, smartphones, iPods, iPads and digital media storage devices are known to be used and stored in vehicles, on persons or other areas outside of the residence.

 d. Smartphones have the capability to access the Internet and store information, such as videos and images. As a result, an individual using a smartphone can send, receive, and store files, including child pornography, without accessing a personal computer or laptop. An individual using a smartphone can also easily plug the device into a computer, via a USB cable, and transfer data files from one digital device to another. Many people generally carry their smartphone on their person.

 e. Child pornographers can now transfer photographs from a camera onto a computer-readable format. With the advent of digital cameras, the images can now be transferred directly onto a computer. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world. The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography.

 f. Child pornography can be transferred via electronic mail or through file transfer protocols (FTP) to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), easy access to the Internet, and online file sharing and storage, the computer is a preferred method of distribution and receipt of child pornographic materials.

 g. The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion. Collectors and distributors of child pornography use online resources to retrieve and store child pornography, including services offered by Internet Portals such as AOL Inc., Yahoo! and Google, Inc., Facebook, Dropbox, Instagram, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services, file exchange services, messaging services, as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Email accounts, online storage accounts, and other online communication accounts allow users to save significant amounts of data, including email, images, videos, and other files. The data is maintained on the servers of the providers, and is occasionally retained by the providers after the user deletes the data from their account.

 h. In my recent investigative experience, as well as recent discussions with law enforcement officers, I know that individuals who collect child pornography are using email accounts, online storage accounts, and other online communications accounts to obtain, store, maintain, and trade child pornography with growing frequency, in addition to, or as an alternative to, the use of personal devices.



       i.     Based on traits shared by collectors, the use of email, online storage accounts, and other online communication accounts, and the increased storage capacity of computers and server space over time, there exists a fair probability that evidence regarding the distribution, receipt and possession of child pornography will be found in the TARGET DEVICES notwithstanding the passage of time.

       j.     In addition, computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they may be recoverable months or years later using readily available forensic tools.

       k.     When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.

       l.     In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.

       m.     The storage capacity of personal computers has increased dramatically over the last few years. Common and commercially available hard drives are now capable of storing over 500 GB of data. With that amount of storage space, an individual could store thousands of video files and/or hundreds of thousands of image files.

       n.     Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits. Since the storage capacity of hard drives has increased dramatically over the last several years, it is more likely that the above-described information will be recovered during forensic analysis.

## PROBABLE CAUSE

       8.     On September 14, 2018, Agent K. Moore with the Maryland Division of Parole and Probation, conducted a visit of Matthew Rhyn Bartles (hereinafter "Matthew Bartles"), the son of the target of my investigation, Mark Steven Bartles (hereinafter "Mark Bartles"), at Matthew Bartles' home located in Hagerstown, Maryland. Agent Moore was conducting a home visit with Matthew Bartles in reference to a complaint she received that he was communicating online with



a female who portrayed herself as 15 years old. Matthew Bartles was on probation as a result of a conviction on October 13, 2015 of Possession of Child Pornography in the Circuit Court for Washington County, Maryland. One of the conditions of Matthew Bartles' probation was that he was not allowed to possess or access a device that had internet capabilities.

9. During the home visit, Agent Moore asked to view Matthew Bartles' cell phone. He complied and handed Agent Moore his cell phone. The home screen of the cell phone was a picture of a minor female wearing a black halter top and bottoms. Matthew Bartles advised that he thought the female was an adult. He then provided Agent Moore with two additional cell phones. At this time, Detective Howard Ward with the Criminal Investigations Unit of the Washington County Sheriff's Office responded to the location to conduct a forensic preview of the cell phones.

10. Through the forensic previews, Detective Ward determined that Matthew Bartles had been communicating with a female who portrayed herself as a 15-year-old. Additionally, Detective Ward observed a picture of a prepubescent female who was wearing black underwear and a black bra saved as the cell phone's background picture. Detective Ward also determined that a second cell phone had internet capabilities and had browser history searches for "Teen Girl Peeing Her Panties" and "Skinny Pissy Panties." The cell phone was last connected to the internet on June 27, 2017. The background photograph on this phone was a prepubescent female who was wearing a two-piece bikini. This phone also contained adult pornography images. Detective Ward relayed all of the information found on each of the cellular devices to Agent Moore.

11. Agent Moore spoke with Matthew Bartles regarding his cell phone usage. Matthew Bartles admitted to Agent Moore that he started the conversation with the 15-year-old female utilizing a phone that his father Mark Bartles provided him when they would meet at a Sheetz store

7



located at 18717 Longmeadow Road, Hagerstown, Maryland. Matthew Bartles described the phone that his father provided him as a black LG smartphone in a green cell phone case. Matthew Bartles advised he met his father, approximately twice a week for the past several months. They met at the Sheetz and used the free wireless internet. Matthew had set up a KIK[1] account and also reactivated his MeetMe[2] account on the phone Mark Bartles provided. Matthew Bartles also advised that Mark Bartles sent him the two background images of the prepubescent females that were displayed on his cell phones.

12. Mark Bartles was convicted of Receipt and Possession of Child Pornography in June 2007 in the United States District Court for the District of Maryland. Mark Bartles was also convicted of Possession of Child Pornography in the Circuit Court for Washington County, Maryland on August 27, 2015. Mark Bartles is currently on federal supervised release and state probation. He is supervised by Agent Moore. A condition of Mark Bartles' state probation is that he is not allowed to possess or access a device that has internet capabilities.

13. On September 14, 2018, after interviewing Matthew Bartles, Agent Moore, Detective Ward, and other investigators conducted an unannounced home visit at Mark Bartles' residence, room 227 of the State Line Inn motel, located at 18221 Mason Dixon Road, Hagerstown, Maryland. Mark Bartles answered the door for Agent Moore and she requested to see his cell phone. He provided Agent Moore with a black ZTE cell phone (Model: ZTEN817, S/N: 320E7600A167, one of the TARGET DEVICES), which was lying on the bed. Agent Moore then asked Mark Bartles about the black LG smartphone in the green case described by Matthew Bartles. Mark Bartles retrieved a black/grey LG smartphone in a green/black case (Model: LM-

---

[1] Kik is a free messenger application that lets users send text, pictures, videos, and other files to other users.
[2] MeetMe is a free social media and dating app where users can browse and communicate with other users located near them.

8



X210ULM, S/N: 803CYJZ0039316, the other of the TARGET DEVICES) from the top drawer of a nightstand next to his bed and gave it to Agent Moore. He stated that both of the cell phones belonged to him and that he was the only one who had access to them.

14. While speaking with Mark Bartles, he admitted to Agent Moore that he would meet his son, Matthew Bartles, at the Sheetz store to use their free wireless internet. Mark Bartles said that he went to websites such as "New Star Candy" which would show him images of young girls, and then he would begin clicking on links which would eventually lead him to images of naked children. He stated that he would delete the images of naked children after viewing them. Mark Bartles told Agent Moore that he had "an issue" and wished he was not interested in those types of images.

15. During the home visit, Detective Ward forensically previewed both of Mark Bartles' cell phones. The cell phones were seized and on September 19, 2018, Detective Ward obtained a search warrant to search the cell phones from a circuit court judge sitting in the Circuit Court for Washington County.

16. Based on the above information, Mark Bartles was arrested for violating the terms of his probation. Following his arrest, he was transported to the Washington County Sheriff's Office for an interview. Mark Bartles was advised of and waived his *Miranda* rights. During the interview, he stated he had a "problem" and that regular pornography does not "do it" for him. Mark Bartles stated that he began looking at adult pornography while imprisoned, which progressed into him looking at child pornography. Mark Bartles said he would look at child modeling sites and would click other links that would eventually take him to child pornography. He advised that he deleted most of the child pornography images that he looked at. Mark Bartles said he did not share any child pornography with anyone, but that he sent two images of small



**19 - 0 0 9 8 JMC**

children in bathing suits via Bluetooth[3] to his son, Matthew Bartles. Mark Bartles also stated that he would meet his son at the Sheetz and would utilize his LG cell phone, one of the TARGET DEVICES, to view photographs of children. Mark Bartles said he knew he violated the terms of his probation by having devices that could connect to the internet.

## SUMMARY

17. Based on my training and experience, as well as the activity of Mark Bartles detailed above, I believe that Mark Bartles displays characteristics common to individuals who access with the intent to view and/or, possess, collect, receive, or distribute child pornography. Based on these characteristics as well as Mark Bartles' demonstrated continued interest in child pornography, and because the digital items appear to be accessed and/or controlled by Mark Bartles, I respectfully submit there is probable cause to believe that the TARGET DEVICES contain evidence of the distribution, receipt, and possession of child pornography.

## CONCLUSION

18. Based on the foregoing information, probable cause exists to believe that contraband, and evidence, fruits, and instrumentalities of violations of the TARGET OFFENSES as set forth herein and in Attachment B, are currently contained in the TARGET DEVICES more fully described in Attachment A. I therefore respectfully request that a search warrant be issued authorizing a search of the TARGET DEVICES for the items described above and in Attachment B, and authorizing the seizure and examination of any such items found therein.

FILED ___ ENTERED ___ RECEIVED
LOGGED ___
JAN 28 2019
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

---

[3] Bluetooth is a wireless communication protocol that can be used to transfer data directly between Bluetooth-capable devices, including most modern smartphones, without the use of the internet.



_[signature]_
Special Agent Jonathan Stewart
Federal Bureau of Investigation

Sworn and subscribed before me
this ___7___ day of January, 2019

_[signature: JMC]_
HONORABLE J. MARK COULSON
UNITED STATES MAGISTRATE JUDGE

FILED _____ ENTERED
LOGGED _____ RECEIVED

JAN 28 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY